UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 7 |
| DON KARL JURAVIN, | Case No. 6:18-bk-06821-LVV |
| Debtor. | Case No. 6:20-bk-01801-LVV |
| _____/ | *Jointly Administered with*<br>Case No. 6:18-bk-06821-LVV |
| MUST CURE OBESITY, Co.,<br>Case No. 6:20-bk-01801-LVV |  |
| Applicable Debtor. |  |
| _____/ |  |
| DENNIS D. KENNEDY,<br>AS CHAPTER 7 TRUSTEE OF THE<br>ESTATE OF MUST CURE OBESITY, CO., | Adv. Pro. No. _____ |
| Plaintiff, |  |
| v. |  |
| APRIL GOODWIN,<br>THE GOODWIN FIRM, P.A., |  |
| Defendants. |  |
| _____/ |  |

## **COMPLAINT**

Dennis D. Kennedy, as Chapter 7 Trustee for the Estate of Must Cure Obesity, Co. ("Trustee"), through counsel, hereby files this Complaint to Avoid and Recover Fraudulent Transfers, Preferential Transfers, and Post-Petition Transfers, and for Turnover against April Goodwin and The Goodwin Firm (collectively, "Defendants") pursuant to 11 U.S.C. §§ 544, 547, 548, 549, and 550 and Chapter 726, *Florida Statutes* ("FUFTA"), and in support thereof, alleges

as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1334 and 157.

2.      Venue is proper in this district under 28 U.S.C. § 1409.

3.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (E), (F), and (H).

## BACKGROUND

### *The Debtor's Business Affairs.*

4.      The Debtor is one of many entities, including Roca Labs, Inc. ("Roca Labs"); Roca Labs Nutraceutical USA, Inc. ("RLN"); Juravin, Incorporated ("JINC"); and Zero Calorie Labs, Inc. ("ZCL"), owned, operated, and controlled by Don K. Juravin ("Juravin") at all times material hereto. The Debtor, Roca Labs, RLN, JINC, ZCL, are all collectively referred to herein as the "Juravin Entities".

5.      The Debtor, Juravin, and the Juravin Entities were involved in selling weight loss products and providing services relating to weight loss software development.

6.      At all times material hereto, the Debtor, Juravin, and the Juravin Entities were involved in the advertisement, marketing, and promoting of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss.

7.      The Debtor, Juravin, and the Juravin Entities accepted consumer payments to Juravin and/or the Juravin Entities for such products, and paid operational expenses on behalf of

Juravin and/or the Juravin Entities in connection with the advertising, marketing, promotion, and sale of such products.

8.    Individual consumers each paid Debtor, Juravin, and the Juravin Entities hundreds of dollars for these worthless weight loss products which were nothing more than a fake medical regime purportedly designed to help consumers lose weight.

9.    The Debtor, Juravin, and the Juravin Entities intended to deceive consumers by marketing the bogus weight-loss products so that the consumers would buy those bogus products, thereby enriching Juravin and the Juravin Entities.

10.    At all times material hereto, acting alone or in concert with others, Debtor, Juravin, and the Juravin Entities formulated, directed, controlled, had the authority to control, or participated in the false advertising and other deceptive business practices perpetrated by the Juravin Entities.

11.    Debtor, Juravin, and the Juravin Entities operated as a common enterprise while engaging in deceptive business practices and fraudulent activities.

12.    The Debtor, and each of the Juravin Entities, was created to further the deceptive and fraudulent weight-loss scam, or to conceal funds of the scam or of other scams created or perpetrated by Juravin.

13.    The Debtor, and each of the Juravin Entities, was created, formed, and operated for an improper purpose.

14.    At all times material hereto, Juravin had authority and control over the Juravin Entities, including without limitation the Debtor.

15.    At all times material hereto, the Juravin Entities, including without limitation the Debtor, were mere instrumentalities of Juravin.

16.    At all times material hereto, Juravin used the financial accounts of the Juravin Entities, including without limitation the financial accounts of Debtor, as his own personal piggy bank.

17.    At all times material hereto, Juravin maintained control of the accounts of the Juravin Entities, including without limitation the Debtor.

18.    At all times material hereto, Juravin transferred substantial funds between and among the bank accounts of Debtor, Juravin, and the Juravin Entities.

19.    For example,[1] from October 31, 2014 to October 31, 2018, the following transfers occurred:

   a.   at least $2,202,915.58 from Juravin's personal accounts to accounts held by the Debtor;

   b.   at least $2,833,206.28 from the Debtor's accounts to Juravin's personal accounts;

   c.   at least $1,000,077.00 from the Debtor's accounts to RLN's accounts;

   d.   at least $2,005,557.00 from Juravin's personal accounts to RLN's accounts;

   e.   at least $587,392.15 from RLN accounts to Juravin's personal accounts;

   f.   at least $476,710.05 from the RLN accounts to the Debtor's accounts;

   g.   at least $964,400.00 from Juravin's personal accounts to accounts held by RLN.

20.    From November 1, 2012 to January 29, 2016, Juravin transferred at least $1,834,731.43 from RLN's accounts to Juravin's personal accounts, and at least $1,160,100.00 from RLN's accounts to JINC's accounts.

21.    Due to the Debtor's, Juravin, and the Juravin Entities' intermingled accounts, and the extent of the transfers between and among such accounts, a transfer from any account

---

[1] The specific transfers referenced in this paragraph and the following paragraph are meant as examples only. Juravin failed to adequately respond to discovery in this case and the Trustee obtained a "break order" (Doc. No. 502) to gain access to the Debtor's electronic records. The Trustee is in the process of reviewing those records, which will likely disclose more transfers of this type.

associated with Juravin or a Juravin Entity constitutes a transfer of property of the Debtor.

**PROCEDURAL HISTORY**

*The FTC Case.*

22.     On September 24, 2015, the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief, initiating case number 8:15-cv-02231, in the United States District Court for the Middle District of Florida ("FTC Case"), against Roca Labs; RLN; Don Juravin; and George C. Whiting, alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

23.     On February 19, 2016, the FTC filed an Amended Complaint to name additional defendants: MCO; JINC; and ZCL.

24.     The FTC alleged that Juravin and the Juravin Entities falsely or deceptively advertised their weight-loss products, causing over $25 million in consumer injury.

25.     The FTC also alleged Juravin and the Juravin Entities unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to prohibit consumers from making truthful or non-defamatory negative comments or reviews about Juravin and the Juravin Entities, their products, or their employees.

26.     The District Court entered a temporary restraining order against Juravin and the Juravin Entities to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze order.

27.     In April 2018, the FTC moved for summary judgment against Juravin and the Juravin Entities on all counts, including the FTC's claim for monetary relief.

28.     Juravin and the Juravin Entities, which were represented by counsel throughout the FTC Case, opposed the FTC's motion and moved for partial summary judgment solely on the

unfair non-disparagement clause claim.

29.     In September 2018, the District Court issued an order granting summary judgment to FTC on all counts as to liability, but requiring further briefing as to the amount of monetary relief.

30.     The District Court denied the motion for partial summary judgment by Juravin and the Juravin Entities.

31.     In the Summary Judgment Order, the District Court found that Juravin and the Juravin Entities were liable for violating Sections 5 and 12 of the FTC Act because they:

    a.  made false and unsubstantiated weight-loss claims about their products;

    b.  falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

    c.  deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

    d.  misrepresented the nature of that purportedly independent site;

    e.  misrepresented that they would keep their customers' private health information confidential;

    f.  misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products;

    g.  unfairly suppressed negative information about Juravin and the Juravin Entities and their falsely advertised products, to the detriment of subsequent purchasers, by

making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

32.     The Honorable Mary Scriven of the United States District Court for the Middle District of Florida found Juravin jointly and severally liable with the Juravin Entities for their deceptive conduct because they operated as a common enterprise under Juravin's ownership and control, with common officers, business functions, employees, and office locations, Juravin knew about the false and deceptive representations, Juravin participated in the deceptive acts, and Juravin had authority to control the Juravin Entities.

33.     On November 6, 2018, the District Court issued an order for $25,246,000.00 in monetary relief against Juravin and the Juravin Entities.

34.     On January 4, 2019, the District Court entered a permanent injunction and a Final Judgment against Juravin and the Juravin Entities in the amount of $25,246,000.00 ("FTC Final Judgment").

35.     On October 27, 2020, following a two-day trial conducted by this Court, the Honorable Karen S. Jennemann entered a Memorandum Opinion finding Juravin intentionally tricked customers into buying the weight-loss products through consistent and repeated misrepresentations, and intended to deceive customers of the Juravin Entities.

36.      This Court found the FTC Final Judgment non-dischargeable as against Juravin.

### *The Juravin Bankruptcy Case.*

37.     On October 31, 2018 (the "Juravin Petition Date"), Juravin filed a Chapter 7 bankruptcy case (the "Juravin Bankruptcy Case").

38.     The Trustee was duly appointed as the Chapter 7 Trustee.

39.     On September 16, 2019, upon Juravin's motion, the Juravin Bankruptcy Case was

converted to Chapter 11 from Chapter 7.

40.    On March 16, 2020, after sustaining all objections to confirmation of Juravin's proposed Chapter 11 plan and finding that Juravin "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case", the Court re-converted the case back to Chapter 7.

41.    On October 5, 2020, the United States Trustee conducted a chapter 7 trustee election.

42.    Trustee was duly elected as Chapter 7 Trustee.

### The MCO Bankruptcy Case.

43.    On January 31, 2020 (the "MCO Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy case, case number 6:20-bk-1801 (the "MCO Bankruptcy Case").

44.    On May 29, 2020, the MCO Bankruptcy Case converted from Chapter 11 to Chapter 7.

45.    On May 29, 2020, Trustee was appointed as the Chapter 7 Trustee.

46.    On November 19, 2020, the Court ordered the Juravin Bankruptcy Case and the MCO Bankruptcy Case to be jointly administered.

## FACTUAL ALLEGATIONS

### Defendants' Work for Various Entities Affiliated with Juravin

47.    The Goodwin Firm's principal address is 801 W. Bay Drive, Suite 705, Largo, Florida 33770.

48.    Ms. Goodwin is an attorney and the founder of The Goodwin Firm.

49.    Ms. Goodwin has known Juravin since approximately January 2015.

50.    Ms. Goodwin first communicated with Juravin after answering an online advertisement he placed on Craigslist seeking an attorney to represent him or one or more of his

entities.

51.    Defendants were then hired by Juravin to perform legal services on his behalf.

52.    Defendants performed legal services for Roca Labs.

53.    Defendants performed legal services for MCO.

54.    Defendants performed legal services for JINC.

55.    Defendants performed legal services for RLN.

56.    Defendants performed legal services for Anna Juravin.

57.    Defendants performed legal services for United Medical Group International, Inc.

58.    Defendants performed legal services for First Global Health Corporation.

59.    Defendants performed legal services for Globesity Foundation.

60.    Defendants performed legal services for Code2God.

61.    Defendants performed legal services for Holy Land Ministry.

62.    Defendants performed legal services for other entities affiliated with the Debtor.

***The Transfers***

63.    Within the four years prior to the MCO Petition Date, the Debtor transferred a total of $200,587.96 to the Defendants (the "Goodwin Transfers"). The Goodwin Transfers are further reflected on the Schedule of Payments attached hereto as **Exhibit A.**

64.    The Goodwin Transfers were transfers of funds obtained by the Debtor through the deceptive and fraudulent weight-loss scam perpetrated by and through Juravin and the Juravin Entities.

65.    The Goodwin Transfers were transfers of ill-gotten gains.

66.    Upon information and belief, the Goodwin Transfers were a prepayment for services to be rendered by the Defendants.

67.     Alternatively, upon information and belief, the Goodwin Transfers were a payment to the Defendants for past due legal services.

68.     All or some of the Goodwin Transfers were made by the Debtor to Defendants for the benefit of Juravin personally or for the benefit of a Juravin Entity other than the Debtor.

69.     Debtor did not receive any benefit or did not receive reasonably equivalent value for all or some of the Goodwin Transfers.

*The MCO Agreement*

70.     On or about September 26, 2018, Defendants entered into a General Counsel Representation Agreement with the Debtor (the "Agreement"). A copy of the Agreement is attached hereto as **Exhibit B.**

71.     Pursuant to the Agreement, the Debtor, though MCO, was obligated to pay Defendants the following amounts:

    a.      $60,000.00 no later than September 17, 2018;

    b.      $25,000.00 no later than October 17, 2018;

    c.      $85,000.00 no later than February 29, 2019.

72.     On or about September 17, 2018, the Debtor transferred at least $60,000.00 to the Defendants.

73.     The Goodwin Transfers was a prepayment for services to be rendered by the Defendants.

74.     Alternatively, the Goodwin Transfers was a payment to the Defendants for past due legal services.

75.     Upon information and belief, further payments were made to the Defendants pursuant to the Agreement either prior to the MCO Petition Date or after the MCO Petition Date.

76.     The Defendants continued performing legal services for Debtor or for Juravin or the Juravin Entities after the Debtor's Bankruptcy Case was filed.

77.     Defendants received payment, post-petition, for services rendered to the Debtor or to Juravin and/or the Juravin Entities.

**COUNT I: ACTUAL FRAUD**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**(Against Defendants)**

78.     The Trustee realleges paragraphs 1 through 77 as if fully set forth herein.

79.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108.

80.     Within four (4) years prior to the Juravin Petition Date, Debtor effectuated the Goodwin Transfers to or for the benefit of the Defendants.

81.     The Goodwin Transfers were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

82.     At the time of the Goodwin Transfers, Debtor was insolvent or became insolvent shortly thereafter.

83.     Debtor was insolvent at the time of the Goodwin Transfers in that its liabilities exceeded his assets.

84.     The Goodwin Transfers are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

85.     Under 11 U.S.C. § 550(a), the Trustee may recover the Goodwin Transfers for the benefit of the estate, to the extent that the Goodwin Transfers are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

86.     There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502

who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Defendants, jointly and severally, finding as follows: (i) that the Goodwin Transfers to Defendants were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the Goodwin Transfers to Defendants and entering a judgment in favor of the Trustee for the value of the Goodwin Transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the Transfer and costs of the suit; (iii) an attachment or other provisional remedy against the Goodwin Transfers or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

### COUNT II: CONSTRUCTIVE FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER
### (Against Defendants)

87.     Plaintiff realleges paragraphs 1 through 77 as if fully set forth herein.

88.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

89.     Within four (4) years prior to the Petition Date, Debtor effectuated the Goodwin Transfers to and for the benefit of the Defendants.

90.     Debtor did not receive reasonably equivalent value in exchange for the Goodwin Transfers.

91.     At the time of the Goodwin Transfers, Debtor intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay them as they became due.

92.     At the time of the Goodwin Transfers, Debtor was insolvent or became insolvent as a result of the Goodwin Transfers.

93.     At the time of the Goodwin Transfers, Debtor's liabilities exceeded its assets.

94.     The Transfer are avoidable under Florida Statute §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

95.     There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

96.     Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the Goodwin Transfers for the benefit of the estate, insofar as the Goodwin Transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against the Defendants, jointly and severally, finding as follows: (i) that the Goodwin Transfers to the Defendants were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the Goodwin Transfers to the Defendants and entering a judgment in favor of the Trustee for the value of the Goodwin Transfers, plus pre-judgment interest from the date of the Goodwin Transfers and costs of the suit; (iii) an attachment or other provisional remedy against the Goodwin Transfers or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

## COUNT III: TURNOVER – 11 U.S.C. § 542
### (Against Defendants)

97.     The Trustee adopts and realleges paragraphs 1 through 77 as if fully set forth herein.

98.     This is an action for turnover pursuant to Section 542 of the Bankruptcy Code.

99.     The Goodwin Transfers, in the amount of at least $200,587.96, to Defendants constitutes property of the Estate.

100.    The Goodwin Transfers are subject to administration by the Trustee, including the payment of creditors.

101.    Defendants have an obligation to preserve the status quo as of the MCO Petition Date and to turn over the Goodwin Transfers to the Trustee.

WHEREFORE, the Trustee respectfully requests the Court to enter a judgment in favor of the Trustee and against the Defendants, jointly and severally, (i) declaring that the Goodwin Transfers, of at least $200,587.96, be immediately delivered and turned over to the Trustee by the Defendants; (ii) granting money damages in the amount of Goodwin Transfers of at least $200,587.96, plus interest at the applicable federal statutory rate; (iii) requiring Defendants to provide an accounting pursuant to 11 U.S.C. § 542(a); and (iv) granting such other and further relief as may be just and proper.

## COUNT V: AVOID AND RECOVER POST PETITION TRANSFERS
### (Against Defendants)

102.    Plaintiff realleges paragraphs 1 through 77 as if fully set forth herein.

103.    This is an adversary proceeding to avoid and recover post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.

104.    Upon information and belief, after the petition date, Debtor transferred funds to Defendants (the "Post-Petition Goodwin Transfers").

105.    The Post-Petition Goodwin Transfers were not authorized by the Bankruptcy Code or by this Court.

106.    The Post-Petition Goodwin Transfers involved property of the estate.

107.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is permitted to the extent that the respective post-petition transfers are avoided under 11 U.S.C. § 549.

WHEREFORE, the Trustee demands judgment against Defendants, jointly and severally, as follows: (i) that the Post-Petition Goodwin Transfers were unauthorized and avoidable under

11 U.S.C. §§ 549 and 550, and FUFTA; (ii) avoiding the Post-Petition Goodwin Transfers and entering a judgment in favor of the Trustee for the value of the Post-Petition Goodwin Transfers, plus pre-judgment interest from the date of the post- petition transfers and costs of the suit; and (iii) for any other and further relief that this Court deems just and proper.

Dated January 30, 2022.

/s/Lauren M. Reynolds
Bradley M. Saxton, Esquire
Florida Bar No. 0855995
bsaxton@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No. 112141
Lreynolds@whww.com
**Winderweedle, Haines, Ward**
  **& Woodman, P.A.**
Post Office Box 880
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
Attorneys for Dennis D. Kennedy,
Trustee

-and-

/s/James D. Ryan
James D. Ryan, Esquire
Florida Bar No. 0976751
jdr@ryanlawgroup.net
lauren@ryanlawgroup.net
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447  Fax: (561) 881-4461
Special Counsel to Dennis D. Kennedy,
Trustee

# EXHIBIT A

| | | | | | | 4-Year Period 01/31/2016 - 01/31/2020 | 1-Year Period 01/31/2019 - 01/31/2020 | 90-Day Period 11/2/2019 - 01/31/2020 |
|---|---|---|---|---|---|---|---|---|
| | | | | *In re:* Must Cure Obesity Co. | | | | |
| | | | | Case No.: 20-bk-01801-LVV | | | | |
| | | | | | | | | |
| | | | | Schedule of Payments to April Goodwin Law Offices | | | | |
| | | | | During the Period of January 31, 2016 Through January 31, 2020 | | | | |
| | | | | | | | | |
| | | | | *(Sorted Chronologically)* | | | | |
| | | | | | | | | |
| **Institution** | **Account Name** | **Account No.** | **Payee** | **Date** | **Amount** | | | |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 05/27/16 | $ (387.96) | $ (387.96) | $ - | $ - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 07/20/16 | (19,500.00) | (19,500.00) | - | - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 08/01/16 | (19,700.00) | (19,700.00) | - | - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 08/25/16 | (3,000.00) | (3,000.00) | - | - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 03/08/17 | (5,000.00) | (5,000.00) | - | - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 03/14/17 | (12,000.00) | (12,000.00) | - | - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 05/30/17 | (35,000.00) | (35,000.00) | - | - |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | April Goodwin Law Offices | 08/18/17 | (20,000.00) | (20,000.00) | - | - |
| Fifth Third Bank | Must Cure Obesity, Co | x7822 | April Goodwin Law Offices | 02/15/18 | (8,000.00) | (8,000.00) | - | - |
| Fifth Third Bank | Must Cure Obesity, Co | x7822 | April Goodwin Law Offices | 03/06/18 | (3,000.00) | (3,000.00) | - | - |
| Fifth Third Bank | Must Cure Obesity, Co | x7822 | April Goodwin Law Offices | 03/13/18 | (3,000.00) | (3,000.00) | - | - |
| Fifth Third Bank | Must Cure Obesity, Co | x7822 | April Goodwin Law Offices | 04/10/18 | (5,000.00) | (5,000.00) | - | - |
| TransferWise | Must Cure Obesity, Co | x8801 | April Goodwin Law Offices | 09/11/18 | (3,000.00) | (3,000.00) | | |
| TransferWise | Must Cure Obesity, Co | x8801 | April Goodwin Law Offices | 09/12/18 | (4,000.00) | (4,000.00) | | |
| Florida Community Bank | Must Cure Obesity, Co | x5200 | April Goodwin Law Offices | 09/17/18 | (60,000.00) | (60,000.00) | - | - |
| | | | **Total Payments from Must Cure Obesity Co. Accounts** | | $ (200,587.96) | $ (200,587.96) | $ - | $ - |
| | | | | | | | | |
| | | | **Total Payments to April Goodwin Law Offices** | | $ (200,587.96) | $ (200,587.96) | $ - | $ - |

# EXHIBIT B

### General Counsel Representation Agreement

**Must Cure Obesity Co.** ("Client") hereby retains The Goodwin Firm ("Firm") to perform legal services on behalf of Client. Client specifically desires to engage Firm on a long term basis to provide general counsel and litigation services. Firm has agreed to represent Client, provide legal advice to Client as necessary, and perform other legal services asked of it, as provided in this Agreement, in consideration of payment for such services as provided in this Agreement.

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties have agreed upon the following terms and conditions:

I.      **EFFECTIVE DATE.** The Effective Date of this agreement is September 1, 2018.

II.     **SCOPE OF WORK.** Providing general legal services on behalf of Client as requested and which Firm deems necessary on Client's legal issues. This Agreement differs in some important respects from conventional representation by a litigation Firm or other Firm retained and paid on an hourly basis. This Agreement is specifically for Firm to assist Client with a range of standard legal issues, consultations, and litigation related to Client's business, and other matters as Client and Firm agree, has been priced based on Firm's knowledge of Client's legal needs due to its longstanding prior relationship with Client. Client acknowledges its obligation to seek advice and services from a qualified tax professional. Firm may require Client to execute a separate paid retainer agreement or pay in advance for matters that exceed the scope of this Agreement.

III.    **FIRM FEES. Hybrid.** Client understands this Contract for Legal Services Agreement is based upon a **hybrid fee basis**. Client understands it is responsible for the non-refundable fee described in section B below which will be applied to the final bill for the hourly rate described in Section C below, plus costs, and expenses and, should any litigated cases settle or a judgment be entered in Client's favor, Client is *also* responsible for the contingency fee set forth in section A below.

The non-contingent fees and costs to be charged in connection with Firm's representation, as described in Sections III B, III C, and IV below, are not predictable and the non-refundable fee is not a cap/ceiling on the fees to be charged, but rather, a payment to be applied to future invoices. Firm has made no commitment to Client concerning the maximum fees and costs that will be charged in connection with work performed by Firm for Client. Although Firm may seek to recover some or all fees or costs from opposing party(ies), it cannot guaranty any such recovery and it shall remain Client's responsibility to make timely payments for all invoices independent of any potential recompense from another party.

A.      **Contingency Fees.** Contingent on Firm's securing relief for Client in any litigated matter, Client agrees to pay Firm, and Firm agrees to accept, whichever is the greater of:

- **The standard hourly fee charged by The Goodwin Firm, P.A.,** (which is currently $400.00 for non-contingent representation), should Firm obtain either a judgment or settlement providing me any affirmative relief; *or*

- **Up to two and a half (2 ½) times those standard hourly fees** in any case in which a Court of law permits a multiplier either because of the quality of the presentation,

1

the result obtained, delay in payment or the contingent nature of the representation, which enhancement for contingency fees has been approved by the Florida Supreme Court in *Florida Patients Compensation Fund v. Rowe*, 472 S.2d 1145, 1151 (Fla. 1985), as modified by *Standard Guaranty Insurance Co. v Quanstrom*, 555 So.2d 828 (Fla. 1990).

• Thirty-eight percent (38%) of any recovery made thereafter by way of settlement, conciliation, court decree, jury verdict or otherwise; or

1. The undersigned Client has, before signing this contract, received and read the statement of client's rights and understands each of the rights set forth therein. The undersigned Client has signed the statement and received a signed copy to refer to while being represented by the undersigned Firm.

2. This contingency portion of the contract may be cancelled by written notification to Firm at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any portion of the contingency fees to Firm for the work performed during that time. If Firm has advanced funds to others in representation of the client, Firm is entitled to be reimbursed for such amounts as Firm has reasonably advanced on behalf of Client.

3. **Fees Obtained from Opposing Party.** Client understands that should Firm be able to obtain compensation of its fees from third parties in litigation, the Florida Bar Rules and Florida criminal statutes forbid the sharing of attorney fees with non-attorneys. However, Client would be entitled to a reimbursement of any and all fees and costs it had actually paid in connection with the litigation in which fees and costs were ordered by a court to be paid by the opposing party in a case.

Additionally, it is *possible* that a court or the Florida Bar could find that, due to the nature of this General Counsel Agreement, Client is entitled to receive the full amount of any fees awarded in a particular case. Client understands Firm will make every possible viable argument that Client should be entitled to receive such fees, but that in the end the decision rests with either the Court in each particular case and/or with the Florida Bar. *Client understands that under no circumstance is Firm obligated to "work off" any fees it may obtain from an opposing party or attorney or to provide future discounted fees to Client because it obtained a fee award in any case.* Of course, Firm may, in the future and in its sole discretion, choose to work with Client on fees it pays to Firm, but that would be in no way related to any award of fees received by Firm in a prior matter.

B. <u>Non-Refundable Fee.</u> In addition to the contingent fees described above, Firm requires a non-refundable payment of **$85,000.00** ("Non-Refundable Fee") to be paid upon per the schedule in Section below. Firm reserves the right to increase or decrease the amount of the Non-Refundable Fee should Client's bills consistently exceed or fall below this amount.

1. The Non-Refundable Fee is earned when received and will be applied to the total fee finally billed to Client at the reduced non-contingent rates set forth in Section C below. Client and Firm intend that Non-Refundable Fee is to be Firm's regardless of what happens after it is paid, even though it is anticipated that the funds will ultimately be applied to the complete fee for legal services. *The Non-Refundable Fee is not subject to refund whether or not Firm actually has to perform the legal services contemplated by this Agreement.*

2

2. Firm will deposit the Non-Refundable Fee into Firm's operating account and **not** into its client trust account.

3. Client understands that *NO portion of the Non-Refundable Fee is refundable to Client, third parties, or able to be re-directed by Client for other purposes under any circumstances, including litigation or legal expenses/costs.*

C. **HOURLY RATE.** The Non-Refundable Fee will be deducted from Client's final bill, at the below hourly rates, which Client is to pay in addition to the contingency rate described in Section A above:

1. Attorney April S. Goodwin: $45.00/hour

2. Attorney Andrew C. Hill (Of Counsel):

   a. 9/1/18-9/30/18
      i. $37.50/hour for up to 200 hours/month
      ii. $38.00/hour for each hour over 200/month
   b. 10/1/18-4/1/19
      i. $39.60 for up to 200 hours/month
      ii. $40.11/hour for each hour over 200/month

D. **PAYMENTS.** Payments will be made to Firm on the following schedule:

1. $60,000.00 no later than 9/17/18.
2. $25,000.00 no later than 10/17/18
3. $85,000.00 non-refundable fee no later than February 28, 2019.

   a. *Payment of this fee prior to February 28, 2019 will be applied to any outstanding fees or expenses as of the payment date, with the remaining amount placed into Firm's trust account until February 28, 2019 at which time it will be transferred to Firm's operating account as the non-refundable fee for the second 180 day period. Funds in Firm's Trust Account remain the property of Client and are refundable to Client.*

4. **Outstanding Fee Balance:** Within 10 days of first daily invoice reflecting same.

All payments should be made payable to "April S. Goodwin, Esq." Interest will be charged and added to the balance of Client's account commencing, and to the extent that same remains unpaid, thirty (30) days after the rendering of monthly billing for said account, interest will be charged at the rate of one and one-half percent (1-1/2%) per month, 18% per annum. Payments received after the tenth (10th) day of any month will be assessed with a late fee of $100.00.

IV. **EXPENSES/COSTS.** Client understands the Rules of Ethics for the Florida Bar prohibit Firm from paying Client's expenses, including, but not limited to, advertising, mediators, court reporters, transcripts, filing fees, court fees and costs, and postage, and that *such expenses shall be paid by Client separately from and in addition to the non-refundable fee.*

3

A.    All expenses over the amount of $100.00 shall be pre-approved by Client. Firm will include any costs by Firm in its monthly invoice as described above. Firm may, at its discretion, choose to advance Client costs. Client agrees to reimburse Firm in full no later than ten (10) days after the invoice date for any costs advanced by Firm.

B.    Should Client wish Firm to pay costs over the amount of $100.00, including payment to third parties and Client's other Firms, Client will deposit the amount of the cost/expense into Firm's Trust Account and Firm will distribute the funds as Client directs. Until and unless such funds are distributed by Firm at Client's direction, the funds in Firm's Trust Account are refundable to Client and any remaining such funds will be refunded to Client at the conclusion of representation.

C.    Client may also choose to pay a vendor directly.

D.    If any expenses are outstanding at the time settlement or award funds are paid, Firm will deduct such outstanding expenses from any award or settlement funds recovered by Firm on behalf of Client.

V.    **INVOICES.** In order to ensure Client is aware of how much work Firm has performed for Client, beginning on October 1, 2018, Firm shall issue *daily* invoices reflecting the hours of work performed by Firm for Client each day and a, for Client's convenience, a *monthly* invoice reflecting the totals for each month on the first of each month or as soon thereafter as is possible. The daily invoices shall be sent by Firm no later than 8:00 a.m. Eastern Time on the day following the day the work was performed. For example, the daily invoice for October 1, 2018, shall be sent by Firm no later than 8:00 a.m. on October 2, 2018.

A.    Daily invoices shall also include all expenses incurred on behalf of Client and indicate any balance for such expenses Client owes to Firm. Client shall pay any outstanding balance for fees or expenses to Firm within 10 calendar days of receipt of the **daily invoice.**

B.    **Objections.** Upon receipt of each *daily* invoice, it is Client's responsibility to review each time entry for legal services rendered and each cost entry for expenses incurred on its behalf. If Client has any questions regarding a daily invoice or disputes a fee, time entry, or any other item in the daily invoice, it must notify Firm in writing within *5 calendar days* from the date the *daily invoice* was sent to Client.

If Client does not provide to Firm within 5 days a specific particularized written objection to or disagreement with any services rendered or charges assessed (as reflected on an invoice), its failure to object shall operate as an agreement and admission that it is fully responsible for all charges reflected on the invoice. Specifically, unless Client notifies Firm in writing within 5 days from the time the invoice was sent to Client of a specific objection to a particular entry or charge thereon, all professional fees charged and all entries on the invoice shall be deemed to be fair and reasonable and all objections to the invoice shall be deemed to be waived and abandoned.

**All such objections to and disagreements with services shall be directed specifically to April S. Goodwin, Esq. and _not_ to Of Counsel attorneys working with Firm. *Repeated violations of this provision may be cause for Firm's early termination of this Agreement.***

4

VI.   **COMMENCEMENT OF WORK.** Retention and representation shall not commence until Firm receives: (1) the original or a copy of this Agreement executed by Client; and (2) all retainers required by this Agreement. Work will not commence until the above retainers have cleared the bank.

VII.   **OF COUNSEL ATTORNEYS.** Client understands that due to its need for full-time general counsel, which Firm would otherwise be unable to meet due to its obligations to other clients and matters, Firm has entered into "of counsel" arrangements with other Attorneys to assist with the high volume of work required by Client. These attorneys are *not* employees of Firm and will not perform work on or otherwise consult with Firm on matters other than those relating to Client. Unless otherwise agreed to by Client, such Of Counsel attorneys will perform work for Client on a "full-time" basis, during regular business hours and during non-business hours as the work requires, subject to the Of Counsel attorneys' availability. They will have no other clients nor handle any matters other than those for Client.

A.   Client understands that Firm has, under separate agreement, obligated itself to compensate any such Of Counsel attorneys based on this Agreement between Firm and Client.

B.   Client agrees that all matters of compensation to Of Counsel attorneys for the non-contingency fee portion of this Agreement are solely and purely within the discretion of Firm.

C.   If Client has an issue with work performed or invoices submitted by Of Counsel attorneys, Client is to address same with Firm owner and manager, attorney April S. Goodwin, and *not* with the Of Counsel attorneys directly, unless given express consent by Ms. Goodwin to do so. *Violations of this provision may be cause for termination of this Agreement.*

Firm understands Client has very particular requests for accounting for work performed and will do its best to accommodate those requests for Client and to ensure its Of Counsel attorneys do the same. Should an Of Counsel attorney fail to live up to Client's strict and particular standards, Firm may, at its own discretion, choose to terminate its relationship with the Of Counsel attorney at issue.

Client understands and agrees that at no time may Client dictate in any way the amount of compensation paid by Firm to Of Counsel attorneys or the timing of when Of Counsel attorneys are paid by Firm. Attempts by Client to do so may result in the early termination of this Agreement.

VIII.   **COOPERATION. Client's cooperation is of the essence.** Client agrees to keep Firm reasonably informed of pertinent information, as well as provide Firm with all requested information in a timely manner, to be honest and candid with Firm, to update Firm with any changes in Client's contact information, and to appear at any conference, meeting, deposition, hearing, mediation, arbitration, proceeding, and trial as requested by Firm. Client understands that it is mutually beneficial to have Firm involved in Client's business on a routine basis and that problems can often be avoided and risk can often be mitigated with prompt attention to issues. Client shall execute such other and further instruments as may be necessary to implement, complete, and perfect the terms and conditions of this Agreement.

IX.   **NO GUARANTEES.** Firm makes no promises or guarantees, now or in the future, concerning the success, the value, or the time to be expended. In the event of a loss, Client may be

liable for the opposing party's Firm fees and will be liable for the opposing party's costs as required by law.

X.    **INSURANCE COVERAGE FOR DEFENSE OR INDEMNITY.** If any matter that Client has entrusted to Firm involves a claim asserted against Client, Client may have insurance coverage that will provide payment for Client's defense of the claim and/or payment of any loss that Client may suffer as a result of the claim. In some instances, Client may also have insurance coverage for costs associated with claims asserted by Client. Client's insurance coverage may be available under a professional liability policy, a business risk policy, a homeowner's policy or any other policy that provides coverage for indemnification of losses. It is Client's responsibility to present claims made against Client and claims presented by Client to Client's insurance agent and to Client's insurance carrier in accordance with the terms of Client's policy(ies).

XI.    **SETTLEMENTS.** All settlement payments or court awards received by Client or by Firm shall be deposited into Firm's Trust Account. Firm shall have irrevocable authority to pay any balance due to Firm of these funds before transferring the balance to Client, *after* Firm has confirmed the funds cannot be "clawed back" by the payor (up to 10 business days after deposit into Firm's Trust Account).

XII.    **TERMINATION/WITHDRAWAL.** Subject to ethical requirements, Firm's representation of Client may be terminated by either party hereto at any time immediately upon written notice to the other party. Firm shall have the right to terminate this Agreement and withdraw from representation if Client does not make payments as required herein, if Client has misrepresented or failed to disclose material facts, if Client fails to follow the advice of Firm, for any reason enumerated in Rule 4-1.16(a) of the Florida Bar Rules of Professional Conduct (mandatory withdrawal), or if Firm determines it is no longer in Firm or Client's best interests to continue the relationship. In any of these events, Client agrees to execute such necessary documents as will permit Firm to withdraw. Any unpaid sums owed Firm are due and payable in full upon termination. Upon discharge of Firm, Client grants Firm a lien for Attorney fees and costs and agrees to execute a confession of judgment in the sum due and owing to Firm. If Client fails and refuses to pay Firm fees and costs due and owing to Firm, Firm has the right to hold Client's file until Client makes payment in full.

XIII.    **WAIVER OF CONFLICTS OF INTEREST.** Client and Firm are not aware of any conflicts of interest at the time of executing this Agreement which would affect the retention and representation. This is not an exclusive contract and Client is free to retain any other legal counsel, as well as additional legal counsel, of its choosing. Other than as disclosed in this Agreement, Firm shall be disqualified from representing any other client with interests materially and directly adverse to Client (I) in any matter which is substantially related to Firm's representation of Client and (II) with respect to any matter where there is a reasonable probability that confidential information Client furnished to Firm could be used to Client's disadvantage. With the exceptions noted, Firm is free to represent other clients, including clients whose interests may conflict with Client's interests in litigation, business transactions, or other legal matters. Client consents in advance to Firm's undertaking of such representations.

XIV.    **SEVERABILITY.** If any provision in this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby.

6

XV.   **DISPUTES.** Any dispute with regards to this engagement or as to the amount of the legal fees shall be submitted for final and binding arbitration in Florida. If the entire dispute can and will be heard by the Fee Dispute Committee of the Florida Bar, then that shall be the forum of arbitration. If the entire dispute cannot or will not be heard by the Fee Dispute Committee of the Florida Bar, then the entire dispute shall be submitted for arbitration before the American Arbitration Association. In any dispute by and between Client and Firm, the prevailing party shall be entitled to recover from the non-prevailing party any reasonable attorney fees and costs incurred. For purposes of this Agreement, Firm and Client acknowledge, understand and agree that arbitration of disputes arising from the interpretation, performance or breach of this Agreement has certain advantages and disadvantages when compared to subjecting such disputes to a court of law where the parties' rights may be decided by a jury. Advantages of arbitration may include faster resolution of disputes, less expense incurred in resolving disputes, and a less burdensome and more private forum for resolution of disputes. Disadvantages of arbitration may include deprivation of the right to a trial by jury, and deprivation of the right to appeal. It is, nevertheless, Client's desire that this Agreement provide for binding arbitration of any disputes between Client and Firm.

XVI.   **BINDING EFFECT.** This Agreement shall be binding on Client and Firm and their respective heirs, representatives, successors, and assigns of any kind or nature whatsoever.

XVII.   **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

XVIII. **HEADINGS; USAGE.** The headings in this Agreement are solely for convenience of reference and are not part of this Agreement. The singular includes the plural in this Agreement, and vice versa.

XIX.   **PARTIES IN INTEREST.** Nothing in this Agreement shall confer any rights or remedies under or by reason of this Agreement on any third person, nor relieve or discharge the obligations or liabilities of any third person to Client or Firm, nor grant any third person any right of subrogation or action over or against Client or Firm.

XX.   **ENTIRE AGREEMENT.** This Agreement contains the entire agreement by and between Client and Firm and supersedes all prior or contemporaneous oral or written negotiations, correspondence, understandings, and agreements by and between the parties regarding the Matter. All amendments to this Agreement shall be in writing and executed by Client and Firm.

XXI.   **GOVERNING LAW AND RULES OF PROFESSIONAL CONDUCT.** This Contract shall be interpreted and enforced in accordance with the laws of the State of Florida. Firm's services shall be governed by the Rules of Professional Conduct as adopted by the Florida Supreme Court, without regard to where the services are actually performed.

XXII.   **INTERPRETATION.** This Agreement shall not be interpreted against Firm simply for the fact that Firm drafted this Agreement.

XXIII. **CLIENT'S PARTICIPATION IN DRAFTING AGREEMENT.** Client agrees it had significant input in the drafting of this Agreement, including the terms regarding the amount and structure of the fees.

7

XXIV. **AUTHORITY/CAPACITY.** This Agreement is entered into by and between Client and Firm knowingly, freely, and voluntarily and without duress, coercion, or undue influence. Client acknowledges that Client is of sound mind and of the age of majority at the time of executing this Agreement. Firm acknowledges Firm is an active and licensed business entity at the time of executing this Agreement. The undersigned Client representative asserts he has the requisite authority to bind Client in this manner.

XXV. **PERSONAL GUARANTEE.** Don Karl Juravin hereby absolutely and unconditionally guarantees all obligations of Client to Firm pursuant to this Agreement.

**WARNING: THIS IS AN IMPORTANT BINDING LEGAL DOCUMENT. IF YOU HAVE QUESTIONS ABOUT WHAT IT MEANS, DO NOT SIGN IT UNTIL YOU HAVE OBTAINED INDEPENDENT LEGAL COUNSEL.**

IN WITNESS WHEREOF, this Agreement has been duly executed by or on behalf of the parties hereto as of the date indicated below.

Client:                                              Firm:

MUST CURE OBESITY                                    THE GOODWIN FIRM, P.A.

_____                     _____
Don Karl Juravin                                     APRIL S. GOODWIN, ESQ.

Date: _____                     Date: 9/26/18 _____